UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE ANN DAHLQUIST, | CASE NO. C14-1360RSM |
| Petitioner, | |
| | ORDER DENYING PETITIONER'S |
| v. | MOTION UNDER 28 U.S.C. § 2255 |
| | TO VACATE, SET ASIDE, OR |
| UNITED STATES OF AMERICA, | CORRECT SENTENCE BY A |
| | PERSON IN FEDERAL CUSTODY |
| Respondent. | |

## I.  INTRODUCTION

Before the Court is Petitioner Julie Ann Dahlquist's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  (Dkt. # 1).  Ms. Dahlquist challenges the 24-month sentence imposed on her by this Court after she pleaded guilty to one count of Social Security Fraud. Petitioner timely brought this petition, and now challenges her sentence on the basis of ineffective assistance of counsel.  After full consideration of the record and for the reasons set forth below, Ms. Dahlquist's § 2255 Petition is DENIED.

## II. BACKGROUND

On June 20, 2013, Ms. Dahlquist was indicted on five counts of Wire Fraud in violation of 18 U.S.C. § 1343 and one count of Social Security Fraud in violation of 42 U.S.C. § 1383a. The Indictment charged Ms. Dahlquist with engaging in a scheme to defraud E.D.L., a 78-year-

old retiree who was Ms. Dahlquist's neighbor and landlord.  Dkt. #15 at 3.  The Indictment alleged that in May 2009, Ms. Dahlquist told E.D.L. that she had been diagnosed with cancer and needed money for treatment. E.D.L. agreed to assist, and wrote Ms. Dahlquist a check for $2,000.  *Id.*  Between May of 2009 and September of 2012, Ms. Dahlquist returned to E.D.L.'s house 189 times asking for more money, purportedly for further cancer treatment. E.D.L. wrote Ms. Dahlquist a total of 190 checks totaling almost $400,000.  *Id.*  According to the government, Ms. Dahlquist never had cancer and instead used the money to support her gambling habit.  *Id.* Ms. Dahlquist subsequently agreed with these facts. Dkt. #15, Ex. C at 4-5 and. Ex. D at 17:18-20.  However, now according to Ms. Dahlquist, E.D.L. "fueled [her] addiction to get what he wanted from [her]."  Dkt. #19 at 2.  She claims that she had been in a 12-year relationship with him and loved him.  *Id.*  She further claims that he offered her money and she did not obtain the checks from him by fraud.  *Id.*

During the period of time she received money from E.D.L., Ms. Dahlquist also collected Supplemental Security Income ("SSI") benefits.  Dkt. #15, Ex. C at 4.  She never reported the income from E.D.L. to the Social Security Administration.  *Id.* at 5.  Her failure to report the extra income ultimately led to her indictment on Social Security Fraud.

On November 15, 2013, Ms. Dahlquist entered into a plea agreement in which she pleaded guilty only to the one count of Social Security Fraud.  Dkt. #15, Ex. C.  As part of the agreement, she also agreed to pay restitution to E.D.L. in the amount of $400,200.00; to the Social Security Administration in the amount of $8,458.00; and to the Washington Department of Social and Health Services in the amount of $8,724.00.  Dkt. #15, Ex. C at 3.

In addition, Ms. Dahlquist acknowledged that she was entering into the plea agreement knowingly and voluntarily, and that she understood by entering into the plea she was giving up

certain appeal rights.  Dkt. #15, Ex. C at 8-9 and Ex. D at 9:17-10:14 and 19:15-17.  In fact, after extensive questioning at the plea hearing, the Court made a finding that Ms. Dahlquist was entering into the plea agreement knowingly, intelligently and voluntarily.  *Id.* Ex. D at 20:15-17.

On March 6, 2014, this Court sentenced Ms. Dahlquist to 24 months in prison and three years of supervised release.  Dkt. #15, Ex. E at 19:16-17.  At the time of sentencing, Ms. Dahlquist had written a letter to the Court regarding her alleged crimes, but declined to make any in-court statements.  *Id.* at 13:11-20 and 15:3-4.

Petitioner now moves to vacate her sentence on the basis of ineffective assistance, arguing that she did not enter into her plea agreement knowingly, intelligently and voluntarily for several reasons as discussed herein.  Dkt. #1.

## III.  DISCUSSION

A  motion under 28 U.S.C. § 2255 permits a federal prisoner, in custody, to collaterally challenge her sentence on the grounds that it was imposed in violation of the Constitution or laws of the United States, or that the Court lacked jurisdiction to impose the sentence or that the sentence exceeded the maximum authorized by law.  Petitioner challenges her sentence on the grounds that she received ineffective assistance of counsel in connection with her guilty plea. The Court finds that Petitioner is not entitled to an evidentiary hearing in this matter because the Petition, files, and totality of the record conclusively demonstrate that Ms. Dahlquist is not entitled to relief.  *See United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).

### A.  Standard of Review for Ineffective Assistance Claims

Petitioner argues that she received ineffective assistance of counsel in four ways: 1) she alleges that her lawyer erroneously permitted her to enter into a guilty plea while under the influence of prescribed medications; 2) she alleges that her lawyer was ineffective for failing to

disclose discovery (*i.e.*, copies of checks) to her, which prevented her from objecting to discrepancies in those documents; 3) she alleges her lawyer was ineffective for failing to object to false information contained in her Pre-Sentence Report ("PSR"); and 4) she alleges that her counsel was ineffective by isolating her from her support system during the time she was trying to decide whether to enter into a guilty plea.  Dkt. #1 at 5.

To establish a claim for ineffective assistance of counsel, Petitioner must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  In order to establish that counsel's performance was deficient, a petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Id.* at 688.  There is a strong presumption that counsel was within the range of reasonable assistance.  *Id.* at 689.  In order to establish that counsel's performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1. *Sensitive Nature of Information at Issue*

As an initial matter, the Court notes the following: because of the nature of Ms. Dahlquist's allegations, which implicated communication between Ms. Dahlquist and her former defense counsel, the government moved for an order finding that Ms. Dahlquist, by her allegations, waived attorney-client privilege over those communications.  Dkt. # 5.  Ms. Dahlquist did not object, and in fact joined the request.  Dkt. #12.  Accordingly, on November 3, 2014, the Court granted the government's motion and directed defense counsel, Federal Public Defender Michael Filipovic, to disclose to the government information pertaining to

1    four enumerated topic areas.  Dkt. #13.  On November 24, 2014, government counsel Seth

2    Wilkinson met with Mr. Filipovic to discuss the topic areas identified in the Court's order.

3    Dkt. #15 at 3.  Following the meeting, Mr. Filipovic completed a Declaration, describing

4    pertinent events.  Dkt. #15, Ex. A.  Mr. Filipovic subsequently submitted a Supplemental

5    Declaration clarifying some of his prior statements.  Dkt. #15, Ex. B.  Mr. Filipovic's primary

6    declaration has been filed under seal due to the sensitive nature of its contents.  The Court has

7    reviewed the Declaration, and its supplement, and will reference these materials as generally as

8    possible to preserve the confidential nature of the information contained therein.

9         *2.   Entry of Guilty Plea Under the Influence of Prescribed Medications*

10        Plaintiff first argues that her counsel was ineffective for allowing her to enter provisions

11   of a guilty plea while under the influence of prescribed medications.  Dkt. #1 at 5.  The Court

12   now finds Petitioner has failed to demonstrate that Mr. Filipovic's performance was deficient or

13   that the alleged deficient performance prejudiced her.  *See Strickland v. Washington*, 466 U.S.

14   at 687.

15        Ms. Dahlquist asserts that at the time she entered into her plea, she was taking the

16   prescription medications lorazepam, fluoxetine, flexeril and oxycontin.  Dkt. #1 at 6.  Although

17   it is not entirely clear, it appears she argues that these medications prevented her from

18   understanding the waiver provisions of her agreement, and that had she not been under the

19   influence of these medications, she would not have knowingly and voluntarily waived her

20   appeal and collateral attack rights.  *Id.* at 6-7.  She also argues that her counsel was ineffective

21   for failing to alert the Court that she was taking these medications.  *Id.*

22        As an initial matter, Ms. Dahlquist cannot demonstrate that her counsel acted deficiently

23   under these circumstances.   Mr. Filipovic was aware that Ms. Dahlquist suffered certain

24

psychological conditions and was taking prescription medications.  Dkt. #17 at ¶ 3.  Mr. Filipovic gathered Ms. Dahlquist's medical and counseling records so that he could personally review the information contained therein.  *Id.*  In numerous subsequent in-person and telephonic conversations with Ms. Dahlquist, he ascertained that she was able to communicate with him effectively and that she understood his legal advice and the legal process.  *Id.* at ¶ 5.  When she did not understand something, she would tell him, and he would review the information until she felt she understood.  *Id.*  As a result, Mr. Filipovic concluded that she was able to understand the nature of the proceedings against her and that she was able to assist counsel in her defense.  *Id.* at ¶ 3.  He also concluded that a competency examination was not necessary.  *Id.*

Prior to Ms. Dahlquist's plea hearing, Mr. Filipovic met with her for approximately one hour.  Dkt. #17 at ¶ 5.  He recalls reviewing the written plea agreement with her at that time.  Dkt. #15, Ex. B at ¶ 3.  In addition, Ms. Dahlquist testified at the hearing that she had reviewed the agreement with counsel.  Dkt. #15, Ex. D at 7:4-10.  Significantly, Ms. Dahlquist herself informed the Court that she was taking prescription medications, but testified that they did not impair her ability to focus or concentrate and they did not adversely impact her ability to think.  Dkt. #15, Ex. D at 5:4-12.  She then went on to testify that she fully understood the waiver provisions of the plea agreement, and that she was giving up those rights to enter into a guilty plea.  *Id.* at 9:18-10:14.  The Court ultimately found that Ms. Dahlquist was entering into the plea agreement knowingly, intelligently and voluntarily.  *Id.* at 20:15-17.  As a result, the Court concludes that Mr. Filipovic was not ineffective in his representation of Ms. Dahlquist by allowing her to enter into a guilty plea even though she was taking many prescription medications.

1    But even if Mr. Filipovic was found to be ineffective, Ms. Dahlquist cannot show that

2    her defense was prejudiced.    Significantly, Ms. Dahlquist affirmatively states that

3    notwithstanding her medication issues, she would have entered into the plea agreement.    Dkt.

4    #1 at 6.  She does not demonstrate that the charge to which she pleaded guilty would have been

5    different or that her resulting sentence would have been any different.  In fact, the Court was

6    aware of her circumstances at the time of sentencing, noting that she is a "very damaged human

7    being."  *See* Dkt. #15, Ex. E at 9:19-11:8.   The Court acknowledged that Mr. Filipovic had

8    "very ably pointed out . . . that she has a plethora of issues and problems, emotional and mental

9    health issues, heavy, heavy doses of narcotics," and that she was taking many other

10   medications.  *Id.* at 15:16-24.

11        Thus, the only way she can demonstrate prejudice is if she can prove that the plea

12   agreement would somehow prevent her from bringing a successful appeal.   However, she has

13   failed to demonstrate any appellate issues upon which she would have been successful.  *See*

14   Dkts. #1 and #19.   While Ms. Dahlquist argues now that she would have insisted on going to

15   trial on the fraud charges with respect to E.D.L., she cannot demonstrate prejudice because she

16   did not plead guilty to those charges.    Further, at her sentencing hearing, her counsel

17   specifically noted the problems the government may have had in proving those charges had she

18   proceeded to trial.  Dkt. #15, Ex. E at 8:7-9:18.  Ms. Dahlquist has failed to show that had she

19   gone to trial on those fraud charges, and had she not been convicted, she would have received a

20   lower sentence than the below-guideline sentence that was imposed after she pleaded guilty.

21   More importantly, she fails to address the charge to which she actually pleaded guilty – Social

22   Security Fraud – and how she would have fared at trial on that charge or how she would have

23

24

ORDER - 7

1    any arguments for a successful appeal.  *See* Dkts. #1 and #19.  As a result, the Court denies

2    Petitioner's motion on this claim.

3         *3.   Failing to Disclose Discovery*

4         Ms. Dahlquist next argues that that her counsel was ineffective for failing to disclose

5    discovery (*i.e.*, copies of checks) to her, which prevented her from objecting to discrepancies in

6    those documents.  Dkt. #1 at 5.  The Court rejects this argument.  Prior to the plea agreement

7    and sentencing, it appears that Mr. Filipovic made all discovery available to Ms. Dahlquist at

8    his office.  Dkt. #17 at ¶ 6.  Apparently, Ms. Dahlquist did not request to examine the

9    documents at that time, but requested to do so after her sentencing hearing.  *Id.*  Those

10   documents were produced to her.  *Id.*  Ms. Dahlquist does not identify the discrepancies she

11   allegedly discovered.  However, to the extent she argues that many of the checks were not

12   written to her, she cannot demonstrate how counsel was ineffective.  As noted above, her

13   counsel specifically noted the problems the government may have had in proving charges

14   involving the checks from E.D.L. had she proceeded to trial.  Dkt. #15, Ex. E at 8:7-9:18.

15        Moreover, she cannot demonstrate prejudice.  She cannot show that had she gone to

16   trial on the fraud charges related to E.D.L., and had she not been convicted, she would have

17   received a lower sentence than the below-guideline sentence that what was imposed after she

18   pleaded guilty.  As a result, the Court denies Petitioner's motion on this claim.

19        *4.   Failure to Object to False Information in Pre-Sentence Report ("PSR")*

20        Ms. Dahlquist next argues that her counsel was ineffective for failing to argue and

21   object to false information contained in her PSR.  Dkt. #1 at 5.  Specifically, she states that her

22   PSR falsely reflected four separate occasions in jail, a suspended driver's license, credit cards

23   that she never possessed, and other false references.  Dkt. #19 at 2.  According to Mr. Filipovic,

24

ORDER - 8

1   his notes do not reflect any objections to the PSR by Ms. Dahlquist prior to entering her guilty

2   plea or prior to sentencing.  Dkt. #17 at ¶ 7.  In any event, Ms. Dahlquist cannot demonstrate

3   any prejudice under these circumstances.  In fact, at her sentencing, the government asked for a

4   sentence below guidelines, in part because she was a person who had spent no more than a day

5   or two in jail.  Dkt. #15, Ex. E at 5:9-20.  Although the Court ultimately imposed a sentence

6   above the term that both the government and Ms. Dahlquist sought, it was still well below the

7   guidelines.  Dkt. #15, Ex. E at 18:23-19:18.  The Court noted that her criminal history may

8   have been "a bit overstated" and it had considered that.  *Id.* at 15:11-15.  Ms. Dahlquist has not

9   shown that any different action by Mr. Filipovic would have changed the resulting sentence.

10  Accordingly, the Court denies Petitioner's motion on this claim.

11          *5.  Isolation From Support System*

12          Finally, Ms. Dahlquist argues that her defense counsel isolated her from her support

13  system thereby depriving her from receiving help in deciding whether to enter a guilty plea.

14  Dkt. #1 at 5.  Plaintiff provides no specifics as to this claim.  In fact, she fails to even allege

15  that she asked to consult with anyone other than her counsel, and she provides no specific

16  occasion when counsel allegedly refused to let her consult anyone other than counsel.  Indeed,

17  Mr. Filipovic can only speculate as to what Ms. Dahlquist may be referring to in this claim.

18  Dkt. #17 at ¶ 8.  He does acknowledge that it is his practice to meet with his clients outside of

19  the presence of friends and family to preserve the attorney-client privilege and promote candid

20  conversation.  *Id.*  He also may have advised her not to discuss her case with others because

21  those conversations would not be privileged.  *Id.* at ¶ 9.  However, Ms. Dahlquist has not

22  shown that either of those typical practices is deficient in any way.  Accordingly, the Court also

23  denies Petitioner's motion on this claim.

24

ORDER - 9

**IV. CONCLUSION**

The Court, having considered Petitioner's motion, Respondent's answer thereto, Petitioner's reply, and the remainder of the record, hereby finds and ORDERS:

1) Petitioner's 28 U.S.C. § 2255 motion (Dkt. #1) is DENIED.

2) This case is now CLOSED.

3) The Clerk of the Court is directed to forward a copy of this Order to Petitioner both at the residential address she has previously provided to the Court and to her current place of incarceration, and to all counsel of record.

4) The Clerk shall also send a copy of this Order to the U.S. Public Defender Michael Filipovic at 1601 Fifth Ave., Suite 700, Seattle, WA 98101.

DATED this 13 day of January 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 10